1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BRIAN EDWARDS,

11            Plaintiff,              No. CIV S-10-2852 GEB GGH P

12       vs.

13   H.D.S.P., et al.

14            Defendants.             ORDER

15   _____/

16            This case was removed to federal court from Lassen County Superior Court

17   pursuant to 28 U.S.C. § 1441(b) on the basis that this court has original jurisdiction of plaintiff's

18   claims arising under the First and Fourteenth Amendments.  Plaintiff is a state prisoner

19   proceeding pro se under 42 U.S.C. § 1983.  See Docket # 2.  Defendants have paid the filing fee.

20            The court is required to screen complaints brought by prisoners seeking relief

21   against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

22   § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised

23   claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be

24   granted, or that seek monetary relief from a defendant who is immune from such relief.  28

25   U.S.C. § 1915A(b)(1),(2).

26            A claim is legally frivolous when it lacks an arguable basis either in law or in fact.

1

1   Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28

2   (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

3   indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,

4   490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully

5   pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th

6   Cir. 1989); Franklin, 745 F.2d at 1227.

7          A complaint must contain more than a "formulaic recitation of the elements of a

8   cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the

9   speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).

10  "The pleading must contain something more...than...a statement of facts that merely creates a

11  suspicion [of] a legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal

12  Practice and Procedure 1216, pp. 235-235 (3d ed. 2004).   "[A] complaint must contain sufficient

13  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft

14  v. Iqbal, No. 07-1015, 2009 WL 1361536 at * 12 (May 18, 2009) (quoting Twombly, 550 U.S. at

15  570, 127 S.Ct. 1955).  "A claim has facial plausibility when the plaintiff pleads factual content

16  that allows the court to draw the reasonable inference that the defendant is liable for the

17  misconduct alleged."  Id.

18          In reviewing a complaint under this standard, the court must accept as true the

19  allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S.

20  738, 740, 96 S.Ct. 1848 (1976), construe the pleading in the light most favorable to the plaintiff,

21  and resolve all doubts in the plaintiff's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct.

22  1843 (1969).

23          Plaintiff alleges that when he asked for a cell move to Building C-4 on December

24  27, 2009, defendant Correctional Officer (C/O) B. Crawford said "We don't want your kind over

25  there," a remark plaintiff claims was racist.  Complaint, Docket # 2, Exhibit A, p. 5.  On January

26  5, 2010, while plaintiff was waiting for his laundry, defendant Crawford called him to the front

of the program office and asked plaintiff: "Why are you looking at me?" Id. Plaintiff alleges, based on these two instances, that this defendant "has issues with black men." Id. at 6. He claims this to be a violation of prison regulations, the state penal code and the employee code of conduct. Id.

Plaintiff further claims that defendant Lieutenant (Lt.) Koenig is implicated for allowing defendant Crawford to make racist remarks to plaintiff and for refusing to reprimand and remove defendant Crawford from the yard, thereby allowing Crawford to continue to racially discriminate against plaintiff and other black inmates. Dkt. # 2, Ex. A, pp. 6-7. Plaintiff also claims that defendant Warden McDonald tried to cover up defendant Crawford's racist statement by not processing plaintiff's 602 inmate appeal and that defendant Correctional Counselor II T. Robertson violated his procedural due process rights by not processing the appeal, which plaintiff claims was a violation of his equal protection rights. Id. at 7.

Plaintiff then goes on to claim that, on January 31, 2010, he was removed from Building C-4, having just been moved from a cell in C-3 on January 29, 2010. Dkt. # 2, Ex. A, p. 8. (Plaintiff evidently, despite his allegations against the defendants named above was permitted the cell move he had sought). Plaintiff claims that his removal from his C-4 cell was caused by C/O M. Rice on the basis of racial discrimination, evidenced by her having told inmates and unnamed C/O's that plaintiff is a predator, also violating CAL. CODE REGS. tit.xv, § 3004(a)(b)(c)[1] and CAL. CODE REGS. tit.xv, § 3391(a).[2] Id. at 8-10. Plaintiff also claims that defendant Koenig, on Feb. 18, 2010, apparently as well as defendant Rice, retaliated against him for filing an inmate grievance against C/O Rice, apparently in the form of having plaintiff forced

---

[1] This regulation recognizes, inter alia, the right of inmates and parolees to respectful and impartial treatment by employees and provides that neither inmates and parolees nor employees are to show open disrespect or contempt for others or to subject others to any form of discrimination, including, of course, racial discrimination.

[2] This regulation addresses employee conduct, directing employees, among other things, to refrain from "indecent" or "abusive" language on duty and cautioning employees against unethical conduct on or off duty.

1    off the yard when he sought an inmate declaration about Rice having called plaintiff a predator,

2    violating a state regulation regarding plaintiff's right to appeal.  Id. at 9, 11.  Plaintiff also alleges

3    that defendant Koenig permitted defendant Rice's alleged discrimination, refusing to reprimand

4    her.  Id. at 9.  Plaintiff alleges two correctional counselors, defendants Robertson and Statti,

5    violated his equal protection rights by refusing to process his staff complaint against defendant

6    Rice.  Id. at 11.

7            Plaintiff then segues rather awkwardly into a claim that various state regulations

8    and the First Amendment were violated when defendant C/O M. Thompson, on March 19, 2010,

9    flung his mail on the floor and had opened his legal mail outside plaintiff's presence.  Dkt. # 2, p.

10    12.  According to plaintiff, defendant Thompson responded inappropriately when plaintiff asked

11    for a cell move on March 21, 2010.  Id. at 12-13.  Defendant Thompson returned his 602

12    grievance crumbled up on March 25, 2010.  Id. at 13.  When plaintiff refused to stand for count

13    later, defendant Thompson locked the tray slot, apparently saying, "you won't stand then you

14    weren't fucking eating."  Id. at 13, 15.  Another C/O, named Reynolds, made sure plaintiff (and

15    apparently his cellmate) were fed.  Id. at 13.  Plaintiff claims that, in retaliation for plaintiff's

16    having failed to stand, plaintiff's cell was searched with only his property being searched.  Id. at

17    13, 15.  Plaintiff claims that defendant Thompson the next day told another inmate to take care of

18    the problem referring to plaintiff.  Id. at 13.  Plaintiff accuses defendant Appeal Coordinator

19    Statti of refusing to process his appeal and allowing "the malice behavior [sic]" to continue and

20    in general of violating his equal protection rights by not processing his appeals.  Id. at 15, 17-19.

21    Plaintiff also claims that defendant Lieutenant D. Sisson condoned defendant Thompson's

22    conduct and aided the retaliation against plaintiff, noting a rules violation report, the substance of

23    which is not set forth.  Id. at 16.  In addition to inappropriately asking for "declaratory relief" in

24    the form of having his grievances against various defendants being made a permanent part of

25    their personnel files, plaintiff also seeks money, including varying amounts of punitive damages.

26    Id. at 6-7, 9-10, 13-15, 19.

Inmates have a right to be free from the filing of false disciplinary charges in retaliation for the exercise of constitutionally protected rights.  Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).  The Ninth Circuit treats the right to file a prison grievance as a constitutionally protected First Amendment right.  Hines v. Gomez, 108 F.3d 265 (9th Cir. 1997); see also Hines v. Gomez, 853 F. Supp. 329 (N.D. Cal. 1994) (finding that the right to utilize a prison grievance procedure is a constitutionally protected right, cited with approval in Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995)); Graham v. Henderson, 89 F.3d 75 (2nd Cir. 1996) (retaliation for pursing a grievance violates the right to petition government for redress of grievances as guaranteed by the First and Fourteenth Amendments); Jones v. Coughlin, 45 F.3d 677, 679-80 (2nd Cir. 1995) (right not to be subjected to false misconduct charges as retaliation for filing prison grievance); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (filing disciplinary actionable if done in retaliation for filing inmate grievances); Franco v. Kelly, 854 F.2d 584, 589 (2nd Cir. 1988) ("Intentional obstruction of a prisoner's right to seek redress of grievances is precisely the sort of oppression that section 1983 is intended to remedy" (alterations and citation omitted)); Cale v. Johnson, 861 F.2d 943 (6th Cir. 1988) (false disciplinary filed in retaliation for complaint about food actionable).

In order to state a retaliation claim, a plaintiff must plead facts which suggest that retaliation for the exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's conduct.  See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  The plaintiff must also plead facts which suggest an absence of legitimate correctional goals for the conduct he contends was retaliatory.  Pratt at 806 (citing Rizzo at 532). Verbal harassment alone is insufficient to state a claim. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).  However, even threats of bodily injury are insufficient to state a claim, because a mere naked threat is not the equivalent of doing the act itself.  See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).  Mere conclusions of hypothetical retaliation will not suffice, a

1  prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's

2  constitutional rights." Frazier v. Dubois, 922 F.2d 560, 562 (n. 1) (10th Cir. 1990).

3          This is not to say that a vexatious grievance filer can never be punished.

4  Vexatious litigants may be the subject of court discipline, and the undersigned would find it

5  incongruous that while the courts can punish vexatious filings, prison officials may not.  Indeed,

6  the right to petition for grievances is not absolutely protected; such a right has no greater

7  protection than speech in general.  Rendish v. City of Tacoma, 123 F.3d 1216 (9th Cir. 1997).  In

8  the prison context, one's free speech rights are more constricted from what they would be on the

9  outside.  O'Lone v. Estate of Shabazz, 482 U.S. 342, 107 S. Ct. 2400 (1987).  Again, plaintiff

10  must show that the actions or omissions constituting the "retaliation" served no legitimate

11  penological goal.

12          With regard to plaintiff's claims of retaliation by defendant Thompson for

13  plaintiff's having refused to stand for count, plaintiff does not frame a First Amendment claim

14  because it can hardly be said that such conduct comes within the rubric of "protected conduct."

15  Nor does plaintiff frame a claim against defendant Sisson for retaliation based on defendant

16  Thompson's conduct simply by claiming that an undescribed rules violation report was

17  generated.  These claims will be dismissed with leave to amend.

18          As to plaintiff's being told by defendant Crawford that his "kind" was not wanted

19  in a particular cell block to which plaintiff admits he was later moved, this is not enough to frame

20  a claim of an equal protection violation in the form of racial discrimination in the context of all

21  the allegations.  While an inference of discrimination can be drawn from the "not your kind"

22  comment, in the context of the granted request to transfer, the alleged comment takes on no more

23  legal significance than a very inappropriate, but isolated, epithet.  However, isolated comments

24  without more cannot form the basis of a prison civil rights action.  See Oltarzewski v. Ruggiero,

25  830 F.2d at 139.  Neither is plaintiff's claim that defendant Rice allegedly told inmates and staff

26  that plaintiff was a predator.  This comment has no clear racial significance at all.  As to

6

plaintiff's claim that defendant Crawford threatened him, also as noted above, threats of bodily injury are not sufficient to frame a claim, because a mere naked threat is not the equivalent of doing the act itself.  See Gaut v. Sunn, 810 F.2d at 925.

However, plaintiff may be seeking to frame a failure to protect claim, i.e., a violation of the Eighth Amendment in his allegations with regard to defendant Rice calling him a predator to others and defendant Crawford allegedly indicating that another inmate should "take care of" plaintiff.  "'[P]rison officials have a duty...to protect prisoners from violence at the hands of other prisoners.'" Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 1976 (1994). "[A] prison official violates the Eighth Amendment when two requirements are met.  First, the deprivation alleged must be, objectively, 'sufficiently serious'....  For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. at 834, 114 S.Ct. at 1977.  Second, "[t]o violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind' ... [T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." Id.  The prison official will be liable only if "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S.Ct. at 1979.   Plaintiff's claims regarding claimed racist comments by defendants Crawford and Rice are dismissed with leave to amend.  To the extent that plaintiff seeks to implicate defendants Koenig and McDonald for failing to take action as a result of defendant Crawford's allegedly racist comments, those claims are dismissed as well.

Plaintiff's claim that defendants Koenig and Rice engaged in retaliation for his having filed a grievance against defendant Rice in the form of plaintiff's being compelled to leave a yard, plaintiff's allegation that he was trying to obtain more information to process an appeal does not sufficiently allege that retaliation was the "substantial" or "motivating" factor behind the defendants' claimed conduct.  This claim will be dismissed with leave to amend.

1    Prisoners do not have a "separate constitutional entitlement to a specific prison

2    grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003), citing Mann v.

3    Adams, 855 F.2d 639, 640 (9th Cir. 1988).  Even the non-existence of, or the failure of prison

4    officials to properly implement, an administrative appeals process within the prison system does

5    not raise constitutional concerns.  Mann v. Adams, 855 F.2d at 640.  See also, Buckley v.

6    Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728 (8th Cir. 1991).  Azeez v.

7    DeRobertis, 568 F. Supp. 8, 10 (N.D.Ill. 1982) ("[A prison] grievance procedure is a procedural

8    right only, it does not confer any substantive right upon the inmates.  Hence, it does not give rise

9    to a protected liberty interest requiring the procedural protections envisioned by the fourteenth

10   amendment").  Specifically, a failure to process a grievance does not state a constitutional

11   violation.  Buckley, supra.  State regulations give rise to a liberty interest protected by the Due

12   Process Clause of the federal constitution only if those regulations pertain to "freedom from

13   restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary

14   incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995).[3]

15   Plaintiff's due process claims against defendants McDonald, Robertson, Statti for their part in the

16   processing, or lack thereof, of his grievances, will be dismissed but plaintiff will be granted leave

17   to amend.

18        With regard to plaintiff's claim against defendant Thompson that his mail was, on

19   some occasion, flung to the ground, that is not enough to implicate the First Amendment.  Nor

20   does plaintiff's allegation that this defendant opened his legal mail outside his presence when it

21

22        [3] "[W]e recognize that States may under certain circumstances create liberty interests
which are protected by the Due Process Clause. See also Board of Pardons v. Allen, 482 U.S.
23   369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to
freedom from restraint which, while not exceeding the sentence in such an unexpected manner as
24   to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek v. Jones,
445 U.S. 480, 493, 100 S.Ct.1254, 1263-1264 (transfer to mental hospital), and Washington[ v.
25   Harper], 494 U.S. 210, 221- 222, 110 S.Ct. 1028, 1036-1037 (involuntary administration of
psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in
26   relation to the ordinary incidents of prison life." Sandin v. Conner, supra.

1  is not made clear whether plaintiff is referencing a single or occasional instance rather than a

2  routine practice:

> The Ninth Circuit and other circuits have held that an isolated
> instance or occasional opening of inmate legal mail, outside of the
> inmate's presence, does not violate the Constitution.  See
> Stevenson v. Koskey, 877 F.2d 1435, 1441 (9th Cir.1989) (prison
> guard's opening of inmate's legal mail outside of the inmate's
> presence was, at most, negligence, and did not reach the level of
> intent necessary for constitutional violation); Brewer v. Wilkinson,
> 3 F.3d 816, 825 (5th Cir.1993); Gardner v. Howard, 109 F.3d 427,
> 431 (8th Cir.1997) (isolated, single instance of opening incoming
> confidential legal mail does not support a constitutional claim);
> Smith v. Maschner, 899 F.2d 940, 944 (10th Cir.1990) (isolated
> incident of opening inmate legal mail "without evidence of
> improper motive or resulting interference with [the inmate's] right
> to counsel or to access the courts, does not give rise to a
> constitutional violation").

11  Oliver v. Pierce County Jail, 2007 WL 1412843 *3 (W.D. Wash. 2007).  This claim will be

12  dismissed but plaintiff will be granted leave to amend.

13  Finally, plaintiff lumps together a conglomeration of apparently unrelated claims

14  against multiple defendants.  Such an amalgamation is inappropriate.

15  If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the

16  conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See

17  Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  Also, the complaint must allege in specific terms

18  how each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless

19  there is some affirmative link or connection between a defendant's actions and the claimed

20  deprivation.  Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598 (1976); May v. Enomoto, 633 F.2d

21  164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Furthermore,

22  vague and conclusory allegations of official participation in civil rights violations are not

23  sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

24  In addition, plaintiff is informed that the court cannot refer to a prior pleading in

25  order to make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended

26  complaint be complete in itself without reference to any prior pleading.  This is because, as a

general rule, an amended complaint supersedes the original complaint.  <u>See</u> <u>Loux v. Rhay</u>, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

In accordance with the above, IT IS HEREBY ORDERED that the complaint is dismissed for the reasons discussed above, with leave to file an amended complaint within twenty-eight days from the date of service of this order.  Failure to file an amended complaint will result in a recommendation that the action be dismissed.

DATED: March 3, 2011

/s/ Gregory G. Hollows
_____
GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
edwa2852.ord

10